Good morning, Congress. I'm Rick Ritterman with my associate Deanna Glick on behalf of Plaintiff Appellant Anisha Washington, and I'd like to reserve two minutes of my time, and may it please the Court. Keep an eye on the clock. You're your own guardian in those two minutes. Thank you, Your Honor. We request that this Court reverse and remand the District Court's decision. Plaintiff clearly exhausted her administrative remedy by filing an administrative complaint before the Office of Administrative Hearings in California. The purpose of exhaustion was fully fulfilled. What's your basic problem here, that the State of California doesn't provide for a residential placement for your client? Yes. Well, actually, the other basic problem is that they have policies that prohibit placement of a student over 18. Where in the law does it say that your client is entitled to a residential placement of this kind in California? Where does it say in California or in the State in which that person lives? The law states that they're entitled to be placed in the least restrictive environment. That's in Federal law. The Federal law also states... But where does it say what leads us to the requirement that it be in California? It's based on the least restrictive environment. It should be as close as home as possible. You're correct. There is no specific law that says it has to be in the State of California. And with the agreement of her representative, she accepted placements outside of California, in Colorado, Devereux, Colorado? Well, her representative accepted the placement. Anisha reluctantly accepted... And then she, on her own volition, left and came back to California. That's correct. So nowhere does it say in the law that it must be in the State where somebody lives? There is no... You're implying that from the least restrictive. Well, under 7572.55, which has since been repealed but was the law at the time of that, there was a legal requirement in the State of California, and I believe that policy would still continue to exist, that you must look at in-State programs first. But if you have no in-State programs to look at, that is a problem. There are no in-State programs to look at by the matter of the policies of the State of California. After she abandoned her placement in Colorado and came out to California, it appears to me that she or nobody on her behalf ever filed a request for a due process hearing. Am I right about that? That is correct. Doesn't that cause you a problem? No, because we would have had the same result if we filed... I hate to interrupt you, but the State keeps telling us that there is the potential for waivers of placements, and so it's a possibility that there could be a placement in California. If you had pursued a waiver, did you pursue a waiver? We did not. We wouldn't be the party to pursue a waiver. If we had been able to create a factual record, it would have been shown that the parties that pursue a waiver would have been the placements themselves. Did you ask the placements themselves to pursue a waiver? We actually did pursue some placements in California, and we were told that she could not be admitted because she would not graduate by the time she was 19. Well, we'll find out from the other side. So you're saying the waiver business that they talk about on their briefs is a dead end? Absolutely. Once a student is 18 years old and is not in a residential facility in California, they cannot get into a residential facility in California as a part of their IEP, and that leaves a complete gap in the services. So pretty much what I hear you saying is that the brief is wrong when it says that county mental health testified that a waiver for in-state residential placement may be available for a student if she established she was working well in a residential program towards obtaining a high school diploma. Actually, I was there at the administrative hearing when he testified to that, and what he precisely testified to was the fact that if she was working towards graduation and would have graduated by age 19, that's the way it works. And the brief says also, in addition, social services has authority to grant a waiver from any licensing restriction which student did not apply for prior to filing a court action. You're saying that's another dead end? It is a dead end, Your Honor. Your Honor, I would assert that you could contact any residential facility in the state of California and ask them if they would admit a student such as Aneesha, and they would have said no because she would not graduate by 19 and they would have been prohibited by regulation from admitting her. We were not able to create that record, but we could have called in multiple residential treatment facilities that would have stated that. It's kind of hard for me to accept your position that there's nothing available to her administratively in the light of the fact that her last due process hearing produced this residential placement in Colorado, so she was successful at that time. Now, you changed the equation on us and said that out-of-state is no good, but she's been very successful administratively. Actually, it was a partial resolution. We raised in our administrative complaint the request for an in-state placement because she needed to transition to California. You're taking a severely disabled minor about to become an adult, has very limited life skills, putting them in an out-of-state placement and you want to transition them back into the community and you're expecting her to go straight from an out-of-state facility in California and come back into the community. But what do you want from the state? Her representative agreed to that. Her representative did not agree it was appropriate. We agreed with the local agencies. We agreed with the local agencies because we had no alternative. The local agencies did try to find a state facility and because of the policies of the state, they were unable to get her place. Mr. Ruderman, may I interrupt this just for a second to see if I understand your argument? You're saying you didn't have to go through a further administrative hearing, didn't have to ask for another due process hearing because it would have been futile to do so. Absolutely. Right? Absolutely. Now, didn't you have to establish the futility of the lack of waiver program in an administrative hearing in order to establish futility? Establish? I'm trying to understand your question, Your Honor. You've got to prove futility. Did you have to prove futility in the administrative hearing before filing your federal claim? No, because the administrative hearing, first of all, you need to understand that at that time we needed to get a placement for her right away. Right. She was going to end up in California with no placement. The Office of Administrative Hearings didn't give us that opportunity. Did you file a complaint saying I want to prove that there's no place in California which will give her a residence because she won't graduate before she's 19? I want to prove that. I want to make a record of that. The defendants will not stipulate to that. I want due process hearing. Did you do that? Well, we did state that in our underlying administrative complaint, and we did name the California Department of Education, and we did name the California Department of Health. When was this? When was this in your underlying administrative complaint? Filed on May 21, 2009. This was before she went to Colorado? That is correct. Stage one, Colorado. After stage one, did you file a complaint with the same group and say, look, I want to prove futility, and I want to prove it right away, and if you're not going to give me a placement, I want to go to the federal district court? Did you do that? No, we did not because the state agencies were dismissed at the highest administrative level, as mentioned in HEF. They were dismissed at the highest administrative level by OAH. OAH took the position that the state agencies were not in the prior proceeding. That's correct. But not in the new proceeding that you could have brought. So do you think there was res judicata ruling on that? I think OAH has, yes. OAH has consistently held that they will not name the state. Do you have any case which could lead us to the conclusion that you're right, that there's been a determination that where the state agency has been dismissed by OAH, in a subsequent prosecution or subsequent request for due process hearing, that party can rely on the prior dismissal? If the court would like, I could do that. You don't have one right away? I don't have one handy, no. But our Office of Administrative Hearings has a list of all the questions. We want to save two minutes, so you're down to one minute. If I can, Judge Bamley, I ask one question. It's not clear to me where we are now. I mean, where is she now and what's going on? A lot of the paperwork is old. The briefs are filed, you know, last April. Right. And I know this is not part of the record, but what's happening with your client right now? She basically crash-landed in California. She came back to California, wanted to try to live with family, but she bounced around, has been multiple in and out of hospitals, repeatedly in and out of hospitals. She, for the last two years, has essentially been homeless, bouncing from family member to family member, in and out of educational programs. In and out of education? What kind of educational programs? Non-public schools locally. But she's not learned anything. Is it part of her, is she pursuing, has she pursued in any respect her FAPE, her IEP, and all the rest of that stuff, or is this just, I mean, you say she's going to school. She has on and off gone to school, yes. And is she, under what circumstances? Under what circumstances? She was living with family members in Elk Grove. The Elk Grove Unified School District offered her a non-public school. Everyone at the IEP did agree that she needed residential treatment. That was part of the issue here. Everyone agreed she needed residential treatment. That was never disputed. So she's been in and out of public schools pursuant to an IEP with an appropriate school district. Well, non-public schools, actually. Non-public schools. Yes. Okay. Thank you, Your Honor. We'll give you a couple minutes for rebuttal. Good morning. May it please the Court. I'm Terry McFarland representing CDE. I'll be using five minutes. And my co-counsel representing mental health and social services, I'm reserving five minutes for her. And she will address the waiver issue. If that pleases the Court. In reviewing the cases to prepare for this today, there are striking differences. This particular case involves a core issue of education, and that is placement. The cases leading up to the pain decision involved claims of physical injury and emotional injury. And those results would be the same even after pain. Isn't your basic position there's administrative opportunities available to her that she hasn't taken advantage of That is absolutely our position. And what are they? Now, this isn't a threat, but we're going to hold you to this. Because what I don't want to have happen is what happens frequently, and that is somebody will argue on appeal, oh, you know, a hearing is wide open and available for somebody, and then they go back a year later and the door is slammed in their face. So if you tell us that there's things out there that are available, you're going to be held to that. Now, what's available and what should she have done, what should she do? Upon coming back from Colorado, she was not able to agree to an IEP with the local educational agencies that were agreeing to provide services for her. She should have come to due process. The first due process claim that was brought before California did not adequately state a cause of action against the state of California and plaintiff failed to do that. She should have claimed that if we were responsible, she should have argued her point at OAH that CDE was responsible for directly educating her, or... Is CDE responsible or not? We are not responsible for directly educating her. What does directly mean? Providing services, providing services. So what does that mean? You are completely off the hook under any circumstances? No. Under IDEA, there can be a claim that we would be responsible for directly educating a child. There are very few instances of that. So your position is that you're not responsible, but you want them to file a due process hearing, which you will oppose. Right. That's what I heard. And you want to have them put to the proof of one of the few cases where you are responsible. Is that fairly stated? Right. I want them to allege that we could be responsible. The local education agency should be there. You heard from plaintiff's counsel. She's been in and out of education. What is a local education agency?  Elk Grove. Elk Grove Unified. Presuming she still lives there. I'm not certain that that's where she lives. Didn't she settle with Elk Grove earlier? She did. No. So she would have to set aside that settlement agreement. No, her settlement was with a prior district. Oh, a prior district. Okay. But there's no facility that California provides that she could be placed in. Is that correct? I am not certain if there is one possible, but we haven't had a judicial determination that such a facility that plaintiff is proposing. Judicial determination or administrative determination? Administrative judicial. Administratively determination. So you're telling us there's a possibility that she could get what she says she needs and she wants, residential in-state placement. I'm saying there's a possibility she could get what she and the school district determined. By filing this complaint in federal court, she's operating outside of the IDEA. She and her representative have an obligation to meet with the school district and determine what the proper placement is. If they disagree with that, then they proceed to due process. But you're saying there's a possibility that she could get what she wants, so it wouldn't be futile. Correct. I don't know of a facility, but the school district could say, here is proper placement for you. In Florida or Colorado, but not in California? It could be. Yes, it could be. In California, yes or no? I do not know because we don't have a record developed where a local education agency has said what is necessary. Is your associate going to be able to answer that question?  Hopefully. A rocket-propelled grenade at the associate. You're saying all these things she ought to do with the local people. She goes back there and they say, fine, it's a great idea, but we have no place in California to put her. And so she goes to Florida, she goes to Colorado, and then you say that she waived her rights to replacement in California. Is that the catch-22 that this poor woman is in? No, I would not say that she had waived her right. The administrative process did not play out in full before. She, CDE, was dismissed and she reached a settlement agreement. So all issues have not been administratively determined the first time, before she accepted placement. And they certainly haven't been addressed after she's come back because she didn't file anything. You see, the problem is they're telling us there's no there there. And you're telling us there may be. But we ask you, well, what is it? And you don't know. I mean, it sounds like she's being ---- It sounds like she's being led by lawyers down this primrose path that I was worried about, you know. You want us to rule, oh, she should go file an administrative complaint and pursue that. And then she's going to get back there and everybody's going to say, sorry, it doesn't work. Perhaps she would be eligible for a waiver or she would have been back then when she was 18. She didn't file. She took the course of action to come here as opposed to going through that administrative process to determine if there was appropriate placement. We'll find out. Thank you. Good morning, Your Honors. Julie Wangeteers with the Attorney General's Office on behalf of the Departments of Social Services, Mental Health, and their respective directors. Let me first address the Court's concern about whether there is a facility that exists in state for residential treatment for the plaintiff here. And the answer is there are facilities. Maybe. Possibly, yes. But, I mean, I think it is also fair to say we don't know. We need the administrative process to develop that. There are two types of waivers available by the Department of Social Services. That first one speaks to if I age out, if I am currently in a residential treatment and I'm 18. So if you live too long, you're out of the ballpark, right? No, no, no, Your Honor, actually. Because the first waiver allows me to say I'm aging out, I'm already in a facility, I'm working towards my high school diploma, let me stay. That's the first type of waiver. Now, where do we find the existence of these waivers in some kind of statute regulation case or whatever? Yes. I discussed them at pages 14 and 17 in my appellee's brief on behalf of Social Services and Mental Health. The second type of waiver is one that the director of the Department of Social Services can offer himself. And that is a broad waiver. That allows a facility to waive, excuse me, that allows the director to waive, let me read you directly. It is Title 22 of the California Code of Regulations, Section 80024. And is that in your brief? That is on page 14 at the top. And it allows the director to waive any state requirements to provide alternate concepts, programs, services, procedures, techniques, equipment, personnel qualifications or staffing ratios. Anisha Washington is severely emotionally disturbed. She may require a higher staffing ratio. So there's the hurdle of age. So we typically don't put adults with minors in a residential program. However, that can be waived. And then there are whatever suits her needs. In other words, if she has violent or suicidal tendencies, she may need an increased staffing ratio. Do you have any cases or situations that you can show to us where this actually has worked and there has been a waiver? I don't have one. If I did, I would have cited it in my brief, Your Honor. But the fact of the matter is, if it worked, it probably wouldn't have resulted in a published decision. In other words, the administrative process would have affected it. So what you're telling us, to play back your own tape, is there's the possibility that if she had applied and gone through this procedure, a waiver could have been granted and she would have been allowed the in-state residential placement that she seeks. Yes. And then I'd also like to address, if I may, the Court's concern about futility. If the Court orders the plaintiff to go back to the administrative process, yes, probably the position of the State would still be that we are not the proper party to provide direct services. That is under the IDEA, the local education agency's responsibility, and under these current facts, Elk Grove Unified. However, that is not to say that the purpose and policy behind administrative exhaustion is what it is, is precisely to affect a remedy, to get a result that is effective for this particular plaintiff. So the point that we may – You're representing the State and the Department, the Social Services Department, and you're taking – and you're in the Ninth Circuit with all the majesty of this courtroom and courthouse, and you're saying we aren't the proper party defendants, we will say no to her, but she ought to start this due process hearing so we can say no to her? No, Your Honor. What I'm saying is she needs to flesh out the details of what is her current IEP, does it require current residential treatment, and if so, she needs the proper party sitting at the table to identify the resources across the State. And if that Social – You're saying you're not responsible for doing any of that. Let me clarify, Your Honor. The local education agency can identify certain programs, certain facilities, and then seek the waiver to the Department. The Department isn't the first line of responsible parties here. But without the Department's approval, things go nowhere. Right. Well, they need to seek it. They need to give the Department – Yeah, and if the Department doesn't give it – then they would appropriately be before this court or before the district court. All right. Let's play a game. You're now in private practice. The other side comes to you, and you tell the other side, here's what you should do right now. What should they do right now? They need to request – well, they need to meet with their – convene an IEP meeting, that's the very first step. With Elk Grove? With whomever – yeah, I mean, presumably. Okay, presumably. Yes. Convene that IEP meeting. Say, does she require residential treatment? If so, get the local county social services representative and mental health consultant. Say, this is what she needs. Where can we find it? Okay, if it's not here in Elk Grove, let's look elsewhere. Are there any other county facilities? And then they could contact state licensing with the Department of Social Services to get a full list of residential treatment programs and call them, each one, and find out, will you take this profile of a resident? And then if everybody says no, or if somebody says, yes, I would, but, you know, they have licensing restrictions, we'll work with you to go with the state to seek a waiver. That's what should happen here. Is there a Devereaux, California like there is, Devereaux, Florida, and Devereaux, Colorado? Certainly, it seemed to me that if there was something in California that would have taken care of this child's needs, you certainly would have kept her here. That's correct. The other point I'd like to make. So maybe the answer to my question, I think it shocked you, was you really don't have one here at all. I don't believe we have a Devereaux, California, Your Honor, that is accurate. But let me put this back into the context of the IDEA. It does not require every state to provide a location-specific placement. It requires the provision of services. And the State of California did provide the provision of services when the plaintiff agreed to placement in Colorado. We provided that. And we are not required under the federal law, plaintiff has not cited any statute, any regulation, much less any case that imposes an obligation on California to provide in-state placement. I see my time is up. It doesn't seem to me there's anything magic about California. I mean, if you're from San Diego and the placement is in Redding or something like that, it might as well be in Colorado or Florida. I would agree with that, Your Honor. Thank you very much. There you go. We asked her exactly what should you do, and she told you. What's your response? Well, my response is this. We fulfilled the purpose of exhaustion by putting them on notice of the problem, and we have a date for it. But this is before the Devereux, Colorado, though, right? That's true, but no one told us about it. If she had stayed there, we would have never heard any more about this, correct? Not necessarily, because she needed to transition back. She needed to transition back to California. So you're still saying we don't want to do that because we did it before the other due process hearing? I think, well, if we can't do it. What's wrong with what she said? You think that she read the waiver part of the code? What's the problem with what she said? Well, first of all, I would assert that nobody uses that waiver. I've never seen that waiver used. I've been doing special ed for 20 years. It's on the books. It's not used. And none of the facilities will apply. It's not used. So what, to sue it to it? It's no longer on the books? Maybe you could create a precedent. It's called procedures. I'm saying here right now it's the procedures in this state. The county mental health department, you can go to any county mental health department in this state, and they will tell you that they cannot place a minor who is 18 or older in a state residential facility. But they can ask for a waiver from the state director. And they will tell you they can only get the waiver if the child is in the facility now, before age 18. So then establish that at a due process hearing and then file your case. That's Judge Baez's point. You haven't proved it yet. We're speculating. That's the problem. Well, we've tried to prove it in the underlying hearing. We tried to prove it in the underlying hearing by bringing in the state agencies, and they got dismissed from the action, and they were deemed a not-a-proper party. None of the local cases ---- But you've got a settlement, and she went to Colorado. You're right. That may be the proceeding. That may be the result you get out of your next due process hearing. We had a partial victory. We wanted placement in California. We wanted a transition so that she could come back to her community. There is an all-female facility 30 miles from Sacramento that we actually looked into that would have been just absolutely appropriate for her. That was off the ---- not available at all. I find it remarkable that they come into this Court and they can't ---- these are the oversight agencies for the State of California, and they can't tell you of a single facility in the State of California that can serve this girl. They cite some regulation that's never implemented. They can't give us any information indicating that that regulation's ever implemented. They never even contacted us when we wrote to them and said, here's a regulation, you go do it. That's the point. When we file a due process complaint, part of this is to put the State agencies on notice. Mr. Rootman, a question.  Do you agree or disagree with her that the obligation of the State of California is to provide services, not to provide necessarily California placement? I disagree. I think that they have a legal duty to do that. What is the basis of your saying that your client has a right to California-located placement? Because it's absolutely needed and necessary? No, no, no, no. The legal basis? Give me ---- of course, this is a law court. Right. 1412A5, 20 U.S.C. 14825. Which says in State? Says least restrictive environment as possible. As possible. As possible. Well, what if the best possible facility for your client, this is a hypothetical, and everybody's judgment would be in Phoenix, all right? And your client lived in Barstow. Would you say that that's not a possibility even though it's the best place for your client because it's across the State line? No, it would depend on the circumstances of the individual. In this case, she had ---- So it could be an out-of-State, could satisfy the section that you just read to us. Under certain circumstances, it could, absolutely. Doesn't that undercut your argument that it must be in California, the least restrictive closest to home? No, it depends on the circumstances. This was an individual who had very limited living skills, who needed to transition back into her community. There are many emotionally disturbed kids who are very high cognitively, who have a lot of daily living skills. They could go to California and easily ---- I mean, go to Colorado and easily transition back to California. She did not have those skills. She has no idea how to get a bank account. She has no idea how to apply for a job. She has no idea how to secure an apartment. She has no idea how to have a checking account, pay her bills. She needed to be brought back to her community. You know, there's no doubt we feel very sorry for your client. It's a terrible situation. You read the facts of this case and your heart goes out to her. But I still, as a matter of legal interpretation of the statute, just don't understand why it must be California. Forget it. And you tell me under certain circumstances it might not have to be. It could be another place if that was the best place for her residentially. Right, but when they've taken off the board, completely off the board, and we have been ---- the State of California has completely taken off the board any residential placements for 18-year-old plus who were not previously in a residential placement in California. They've taken that off. And many of those students are the most extreme because they had to go out of state. And so they don't have the opportunity to transition into a state facility and step down from being out of state so that they can transition back into their community. Exactly what are you asking us to do? Tell us precisely what you want us to do. Well, I want you to reverse the case and remand it back to the court. For what? Remand it for what? For the court to give declaratory injunctive relief against the state saying that these policies and regulations are in violation of the IDEA. And they must find a residential placement for her in California. And give the ---- give authority for a residential placement in California to accept this minor. Well, she's not a minor anymore. Except the student. Anything further, Your Honor? No. Thank you. Thank you. Thank you. The case of Washington v. Cal DOE will be marked as submitted. We thank counsel for a very informative oral argument. Thank you.
judges: Stafford, Trott, Bea